UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YOLANDA JUAN,

        Plaintiff,

vs.                                                 Case No. 8:05-cv-1171-T-24MSS

HILLSBOROUGH COUNTY A/K/A
HILLSBOROUGH COUNTY DEPARTMENT
OF AGING SERVICES,

        Defendant.
_____/

## **O R D E R**

This cause comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 23). Plaintiff filed a response in opposition thereto (Doc. No. 26).

**I.**     **Background**

**A.**     **Procedural Background**

On June 8, 2005, Plaintiff filed her complaint in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida (Doc. No. 2). On June 22, 2005, Defendant filed a timely Notice of Removal, pursuant to 28 U.S.C. §1441(b)(Doc. No. 1). On July 28, 2005, Plaintiff filed an Amended Complaint. In her Amended Complaint, Plaintiff asserts claims for violation of the Fair Labor Standards Act, as amended, 29 U.S.C. §201, *et seq.* ("FLSA")(Count I), unpaid wages in violation of Florida Statute §448.08 (Count II), Unjust Enrichment (Count III), and Intentional Infliction of Emotional Distress (Count IV)(Doc. No. 8).[1]

---

[1] The Court notes that Counts III and IV are misnumbered in the Amended Complaint.

**B.     The Parties**

Defendant is Hillsborough County, a Political Subdivision of the State of Florida (Doc. No. 9, n. 1). On February 9, 1996, Defendant hired Plaintiff as a social worker in its Department of Aging Services.[2] Plaintiff initially worked in a section called Home Care for the Elderly which was reorganized in 2001 and titled Community Care for the Elderly ("CCE")(Doc. No. 26, Juan Depo., pp. 6-7 and 9). In 2003, Plaintiff was promoted to a Senior Social Worker (Doc. No. 26, Juan Depo., pp. 6 and 12). In June 2003, Plaintiff became a team leader and supervised four other social workers (Doc. No. 26, Juan Depo., p. 12). On June 30, 2004, Plaintiff left her employment with Defendant (Doc. No. 26, Juan Depo., p. 8).

**C.     Defendant's Department of Aging Services and Its Workload**

Defendant's Department of Aging Services is responsible for delivering programs and services countywide to people who are 60 years of age or older for the purposes of maintaining them in the community and preventing them from prematurely being placed in nursing homes (Doc. No. 26, Price Depo., pp. 9-10). The Department of Aging Services is made up of seven sections that include a case management section (also known as CCE), a fiscal administrative services section, a senior center section, a nutrition services section, an in-home services section, a quality management section, and a volunteer services section (Doc. No. 26, Price Depo., pp. 10-12). Myra Price is the Director of Defendant's Department of Aging Services (Doc. No. 26, Price Depo., p. 9). From 2001 until March of 2003, Gil Machin was the CCE Section Manager

---

[2] Defendant states that "Hillsborough County Department of Aging Services" is merely a term of administrative convenience and has no legal significance as a separate legal entity that can sue or be sued (Doc. No. 9, n. 1).

(Doc. No 26, Woodard Depo., p. 18).  From March 2003 until the present[3], Bruce Dangremond has been the Section Manager of CCE (Doc. No. 26, Dangremond Depo., p. 5).

In 2001, Defendant's Department of Aging Services combined several programs, redistributed files based on zip codes, and increased case loads from 40 to 80 cases per worker. When this redistribution of files was implemented, Plaintiff alleges the time required to complete caseload work increased and the work could not be done in a 40 hour work week (Doc. No. 26, Juan Depo., p. 11 and Mamen Depo., pp. 12-15).  Subsequently, in January 2003, several CCE Senior Social Workers were required to act as team leaders and supervise four social workers (Doc. No. 26, Juan Depo., pp. 12-13; Mamen Depo., pp. 15-16 and Woodard Depo., pp. 8-9).

### C. Alleged Overtime Worked and Defendant's Purported Knowledge Thereof

Plaintiff alleges that as a result of Defendant's policies and practices, she was required to bring work home and work more than 40 hours per week (Doc. No. 8, ¶12).  Specifically, Plaintiff alleges that between July 2001 and July 2004, she worked over 1,000 hours of overtime to meet Defendant's required work practices (Doc. No. 8, ¶13).  Plaintiff contends that Defendant knew of Plaintiff's overtime work hours (Doc. No. 8, ¶13).  Defendant admits that at all relevant times, Plaintiff was qualified to earn overtime as an hourly employee (Doc. No. 23).

### II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears

---

[3] Bruce Dangremond testified during his deposition that he has been out on medical leave since March 30, 2006 (Doc. No. 26, Dangremond Depo., p. 11).

the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. See id. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III. Discussion

Defendant moves for summary judgment as to all counts. However, Plaintiff has agreed to voluntarily dismiss Counts II - IV of her Amended Complaint (Doc. No. 26). As such, the Court will only address Count I - Plaintiff's FLSA claim.

The crux of Plaintiff's claim under the FLSA is that her workload as a social worker could not reasonably be performed within a 40 hour work week and that it was necessary for her to work overtime. Defendant argues that summary judgment is appropriate because: (1) Plaintiff admits that she never reflected overtime on her time sheets; (2) Plaintiff was aware of the Defendant's departmental policy that she could not work overtime without advance authorization; and (3) Plaintiff testified in her deposition that her time sheets, which reflect no overtime, are accurate.

#### A. FLSA Claim Legal Standard

Under the FLSA, no employer shall employ any of its covered employees for a work week that is longer than 40 hours unless that employee receives as compensation for his employment at least one and one-half times the regular rate for all overtime hours. See 29 U.S.C. §207(a)(1); see also Dade County, Fla. v. Alvarez, 124 F. 3d 1380, 1384 (11th Cir. 1997). The term "employ" is defined as "to suffer or permit to work" and "[w]ork not requested but suffered or permitted is work time." 29 U.S.C. §203(g) and 29 C.F.R. §785.11; see also Reich v. Dep't of Conservation and Natural Res., State of Ala., 28 F.3d 1076, 1082 (11th Cir. 1994).

In order for a plaintiff to recover for uncompensated overtime work under FLSA, he must show that: (1) he worked overtime hours without compensation, and (2) that the employer had

knowledge, or should have had knowledge, of his overtime work. See Gaylord v. Miami-Dade County, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999). However, when an employer has no knowledge that an employee is engaged in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours in not a violation of §207. See Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981); see also Newton v. City of Henderson, 47 F.3d 746, 748-49 (5th Cir. 1995).

   **B.**  **Plaintiff's Time Sheets and Defendant's Knowledge of Overtime**

In Anderson v. Mt. Clemens Pottery Co, 328 U.S. 680, 687-88 (1946), the Supreme Court established Plaintiff's burden of proof:

> "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out [her] burden if [s]he proves that [s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."

See also Rossi v. Associated Limousine Services, Inc., 438 F. Supp. 2d 1354, 1365 (S.D. Fla. 2006)(citations omitted).

In support of its motion for summary judgment, Defendant attaches Plaintiff's time sheets from June 15, 2003 through May 29, 2004 (Doc. No. 23, Exhibit 2). Each time sheet is signed by Plaintiff below a certification that reads: "I hereby certify the above to be correct." Plaintiff concedes that none of her time sheets reflect any overtime. Defendant argues that since there is no issue of material fact regarding the accuracy of Plaintiff's time sheets, the Anderson analysis

stops there, and it is entitled to summary judgment on Plaintiff's FLSA claim as a matter of law.

Plaintiff argues in response that the facts in evidence demonstrate that Defendant had knowledge that she, as well as other social workers, were working overtime hours for which they were not compensated. The Court finds that there are genuine issues of material fact in this case, including whether Plaintiff worked overtime, whether Defendant had knowledge, or should have had knowledge, of Plaintiff's purported overtime work and whether her time sheets were "inaccurate" when she submitted them.

Specifically, Plaintiff has offered evidence through the deposition testimony of Nicole Woodard, Shibu Mamen, Linda Peterson, and Kay McRoberts that Defendant had knowledge that Plaintiff, as well as other employees, were working overtime and that CCE managers actually directed overtime hours be omitted from time sheets. With respect to her time sheets and lack of reflected overtime, Plaintiff stated in her deposition:

> Q. After you worked your overtime, did you then report the overtime?
>
> A. What for? I wasn't going to get paid.
>
> Q. So you kept it off the books.
>
> A. Everybody did.
>
> Q. So you did not reflect your accurate time on your time sheets.
>
> A. No.
>
> Q. And the reason you didn't was you perceived you would not be paid for that?
>
> A. Exactly.

(Doc. No. 26, Juan Depo., p. 27). Plaintiff's husband, Felix Juan, also testified in his deposition that Plaintiff often worked overtime (Doc. No. 26, F. Juan Depo., pp. 51-54 and 57-59). "It is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough." 29 C.F.R. §785.13; see also Fletcher v. Universal Technical Inst., Inc., 2006 WL 2297041, *5 (M.D. Fla. 2006)(quoting Reich, 28 F.3d at 1082)). As such, Defendant's motion for summary judgment is denied.

### C.      Statute of Limitations

Defendant also contends that Plaintiff's FLSA claim is limited to overtime worked during the two years proceeding the filing of her complaint, namely, June 8, 2003 through June 8, 2005[4]. Defendant further contends that since Plaintiff left her employment with Defendant in June 2004, Plaintiff's FLSA claim is limited to overtime worked between June 8, 2003 and June 2004. Plaintiff argues that because Defendant's violation of the FLSA was willful, she is entitled to assert violations from June 2002 through June 2004.

Generally speaking, "[o]rdinary violations of the FLSA are subject to the general 2-year statute of limitations." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 (1988). However, a finding of willful violation subjects an employer to a three year, rather than two year, statute of limitations in an action for unpaid overtime compensation. See id. at 128. "To establish a willful violation of the FLSA, [Plaintiff] must show that the [Defendant] either knew or showed a reckless disregard for the matter of whether its conduct was prohibited by the statute." Palmer

---

[4]The date Plaintiff filed her complaint in state court.

v. Stewart County School Dist., 178 Fed. Appx. 999, 1005 (11th Cir. 2006)(citing McLaughlin, 486 U.S. at 133).

Plaintiff argues that in the instant case, Defendant had evidence through the employees' complaints to management that employees were working in excess of 40 hours, but failed to inquire further into the matter until the investigation by Kay McRoberts[5] after Plaintiff had left Defendant's employ. As stated above, there are genuine issues of fact as to whether Defendant had knowledge, or should have had knowledge, of Plaintiff's purported overtime work and whether her time sheets were "inaccurate" when she submitted them. These disputed facts preclude this Court from making a determination of whether there is a Plaintiff is a two or three year statute of limitations for Plaintiff's claim under the FLSA.

### IV.     Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1)     Counts II, III, and IV of the Amended Complaint (Doc. No. 8) are **DISMISSED**.

(2)     Defendant's Motion for Summary Judgment (Doc. No. 23) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of October, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

All Parties and Counsel of Record

---

[5] Kay McRoberts was an outside personnel analyst hired to investigate complaints against the Department of Aging Services. She wrote a draft report which addressed overtime worked by employees.